No. 82-55

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

FORREST STANLEY BALLARD,

        Defendant and Appellant.

---

Appeal from:  District Court of the Fifth Judicial District,
In and for the County of Beaverhead, The Honorable Arnold Olsen, Judge presiding.

Counsel of Record:

    For Appellant:

        Chester L. Jones, Virginia City, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
W. G. Gilbert, County Attorney, Dillon, Montana

---

Submitted on Briefs:  September 16, 1982

Decided:  December 29, 1982

Filed:  DEC 29 1982

Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant appeals from his conviction on two counts of negligent homicide in the District Court of Beaverhead County. We affirm.

Officer Stephen Shaffer of the Dillon police force was on duty in the early morning of February 14, 1981. At about 1:49 a.m. he radioed to the police dispatcher that there was a possible drunk driver passed out in the middle of Selway Drive on the edge of town. Shaffer had come upon a pickup truck operated by Benny Williams. Williams' truck had stopped in the southbound lane.

Shaffer, likewise headed south, stopped behind Williams' truck and had his flashing warning lights on. During the stop both men were standing and talking beside their vehicles.

Defendant was driving a pickup headed north on Selway Drive. Defendant's truck struck the Williams vehicle, hit and killed both Williams and Shaffer, struck the left front part of the police car and came to rest in a ditch off the east edge of Selway Drive.

On February 17, 1981, defendant was charged with two counts of negligent homicide. On February 24, 1981, the State gave notice to the defendant of its intent to have defendant designated a persistent felony offender and to seek increased punishment based on defendant's conviction of burglary (a felony) on March 25, 1975, and the five-year sentence imposed. Defendant was released on parole on March 17, 1976.

The defendant, upon release from the Montana State Prison, was paroled and held on federal detainer for parole

-2-

violation after convicted of a car theft committed in 1970. Defendant was placed on a federal furlough program and was released from the program on July 28, 1977.

On September 17, 1981, defendant filed a motion for change of venue and a motion to quash the State's notice of intent to seek increased punishment. The change of venue was denied after a hearing on September 23, and defendant's motion to quash was similarly denied.

After a trial in early October, the jury returned a verdict of guilty on each count. At the sentencing hearing on November 2, 1981, the judge found defendant to be a persistent felony offender and sentenced him to twenty years on each count to run consecutively or a total of forty years. Defendant appeals and presents two issues for our review:

1. Did the District Court err in failing to grant defendant's motion for change of venue?

2. Did the District Court err in applying the persistent felony offender statute to defendant?

Appellant correctly refers us to State v. Link (1981), ____ Mont. ____, 640 P.2d 366, 38 St.Rep. 982, as setting forth the present test as to when a change of venue should be granted:

> "[T]he rule is that an accused is entitled to a change of venue when it appears there are reasonable grounds to believe that the prejudice alleged actually exists and that by reason of the prejudice there is a reasonable apprehension that the accused cannot receive a fair and impartial trial. People v. Berry (1967), 37 Ill.2d 329, 226 N.E.2d 591, 592-593." 640 P.2d at 368, 38 St.Rep. at 985.

Appellant argues that there was a reasonable apprehen-

sion that the defendant would not receive a fair trial in this case for three reasons. There was community upheaval about the double death including concern that defendant was not brought to an early trial and that defendant was still driving after the accident. There was prejudicial knowledge in the community regarding defendant's prior criminal conduct and testimony adduced at the venue hearing that defendant was "a bad egg and had trouble here in town for years and years" and that the county attorney told some people inquiring about defendant's past conduct to "get his record." Finally, the fact that no local counsel could be obtained for defendant further indicates that defendant could not receive a fair trial in Dillon. These are the principal bases of defendant's contentions.

Appellant has not proven "reasonable grounds to believe that the prejudice alleged actually exists and that by reason of the prejudice there is a reasonable apprehension that the accused cannot receive a fair and impartial trial." Link, supra.

While it is true that defendant's argument accurately reflects a portion of the transcript of the venue hearing, there was other testimony showing no prejudicial predisposition or "reasonable apprehension." There was testimony that the community reaction had subsided significantly within a few months after the accident from two of defendant's witnesses and two of the State's witnesses. The editor of the Dillon newspaper testified that he had heard nothing about defendant's prior criminal record or any statements about the defendant's guilt or innocence. Two other witnesses, a local merchant and the county attorney, testified they felt

-4-

defendant could get a fair trial in Dillon. The county attorney further testified that a maximum of five people, other than police department employees, had remarked to him that they knew defendant had been in trouble with the law before.

Moreover, we note that, in denying defendant's motion for a change of venue, the District Court stated that the motion could be renewed at any time, including when the jury was empaneled. The motion for change of venue was never renewed. The voir dire portion of the transcript was not submitted on this appeal, and appellant does not address any comments in his brief alleging prejudice on the part of the jury members actually selected.

The second issue revolves around the construction of section 46-18-501, MCA, which provides in part:

> "<u>Definition of persistent felony offend-</u>
> <u>er.</u> A 'persistent felony offender' is an
> offender who has previously been convict-
> ed of a felony and <u>who is presently being</u>
> <u>sentenced for a second felony</u> committed
> on a different occasion than the first.
> An offender is considered to have been
> previously convicted of a felony if:
>
> "(1) the previous felony conviction was
> for an offense committed in this state or
> any other jurisdiction for which a sen-
> tence to a term of imprisonment in excess
> of 1 year could have been imposed;
>
> "(2) less than 5 years have elapsed
> between the commission of the present
> offense and either:
>
> "(a) the previous felony conviction; or
>
> "(b) the offender's release on parole or
> otherwise from prison or other commitment
> imposed as a result of the previous
> felony conviction; and
>
> "(3) the offender has not been pardoned
> on the ground of innocence and the con-
> viction has not been set aside in a post-
> conviction hearing." (Emphasis added.)

"Felony" is defined by section 45-2-101(21), MCA:

> "(21) 'Felony' means an offense in which the sentence imposed upon conviction is death or imprisonment in the state prison for any term exceeding 1 year."

A misdemeanor is an offense where the sentence imposed is imprisonment in the county jail or state prison for one year or less. Section 45-2-101(36), MCA.

"Conviction" is defined by section 45-2-101(15), MCA:

> "(15) 'Conviction' means a judgment of conviction or sentence entered upon a plea of guilty or upon a verdict or finding of guilty of an offense rendered by a legally constituted jury or by a court of competent jurisdiction authorized to try the case without a jury."

A person convicted of negligent homicide may be sentenced to a term not to exceed ten years in the state prison, section 45-5-104(2), MCA.

Under Montana law an offense is not classified as a misdemeanor or felony until the sentence is imposed (section 45-2-101(21), MCA, supra). Defendant argues that the persistent felony offender statute should not apply to defendant because whether defendant is convicted of a "second felony" (required by section 46-18-501, MCA, supra) on a negligent homicide charge depends on whether the District Court sentences the defendant to a term exceeding one year in the state prison. Our negligent homicide statute gives the District Court discretion to sentence a convicted defendant to a term of less than one year or no time at all, which would bring the scope of the offense within the misdemeanor statute.

Thus, the issue of whether the defendant will be convicted of a "second felony" is not resolved until the defendant is sentenced and from this defendant argues that

-6-

he was not "presently being sentenced for a second felony" under section 46-18-501, MCA, at the time he was sentenced for the negligent homicide charges. Defendant contends that the charge in this case is not a charge of a felony and does not become a felony until following the sentencing. Defendant argues that the charge remains an "offense" until sentence is imposed.

We reject defendant's contentions as being a hyper-technical construction which contravenes the purpose of the persistent felony offender statute. We note that defendant does not question the fact that he has been previously convicted of a felony. The nub of defendant's argument is a timing question and, as a practical matter, the District Court here must have imposed a sentence in excess of one year in the state prison before the persistent felony offender statute was triggered, allowing the enhanced sentence. As a result, the final sentence imposed was based on a second felony conviction as required by section 46-18-501, MCA.

Section 46-18-501(2), MCA, classifies a person as a persistent felony offender if less than five years have elapsed between the commission of the present offense and defendant's release on parole for the previous felony conviction. The present offense occurred on February 14, 1981, and defendant was paroled from his previous felony conviction (burglary) on March 17, 1976, clearly falling within the five-year time limit.

It is clear from the face of the persistent felony offender statute that the purpose behind it was to allow a District Court to impose an increased sentence for defendant

who meets the five-year criterion set forth above. As stated earlier, there is no question raised as to defendant's first felony conviction. Here, the conviction on the two counts of negligent homicide involved the defendant, legally intoxicated, killing two people with his pickup. Clearly defendant could have fallen within the classification of a dangerous offender in the legislative mandate that governs Title 46, Chapter 18 (wherein the persistent felony offender statute appears), i.e., that the chapter be liberally construed to the end that dangerous offenders be correctively treated in custody for long terms as needed. Section 46-18-101, MCA. Defendant's attempt to avoid the consequences of his actions by hypertechnical statutory construction is not well taken.

Persistence in crime and failure of earlier discipline to effectively deter or reform justify more drastic treatment. Pennsylvania ex rel. Sullivan v. Ashe (1937), 302 U.S. 51, 58 S.Ct. 59, 82 L.Ed. 43. Increasing the sentence of a persistent felony offender is entirely consistent with the constitutional mandate that laws for the punishment of crime shall be founded on the principles of prevention and reformation. Art. II, Sec. 28, 1972 Mont. Const.; State v. Maldonado (1978), 176 Mont. 322, 578 P.2d 296.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

-9-